USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 6-21-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
P.L., A.Q., K.T., R.F.J., A.R.B., B.M.B., and J.C., :
*Individually and on behalf of all others similarly* :
*situated*; **BROOKLYN DEFENDER SERVICES,** : 1:19-cv-01336 (ALC)
**THE LEGAL AID SOCIETY;** and **THE BRONX** :
**DEFENDERS,** : **OPINION AND ORDER**
:
 Plaintiffs, :
-against- :
:
**U.S. IMMIGRATION AND CUSTOMS** :
**ENFORCEMENT; U.S. DEPARTMENT OF** :
**HOMELAND SECURITY; UNITED STATES** :
**DEPARTMENT OF JUSTICE; EXECUTIVE** :
**OFFICE FOR IMMIGRATION REVIEW;** :
**RONALD VITIELLO,** Deputy Director and :
Acting Director of ICE, in official capacity; :
**KIRSTJEN NIELSEN**, Secretary of Homeland :
Security, in official capacity; **MATTHEW G.** :
**WHITAKER**, Acting United States Attorney General, :
in official capacity; **MATTHEW T. ALBENE,** :
Executive Associate Director of ICE Enforcement :
Removal Operations, in official capacity; **THOMAS R.** :
**DECKER**, Director of New York Field Office of ICE, :
in official capacity; **WILLIAM P. JOYCE**, Deputy :
Director of New York Field Office of ICE, in official :
capacity; **JAMES MCHENRY**, Director of Executive :
Office for Immigration Review, in official capacity; and :
**DANIEL J. DAUGHERTY**, Assistant Chief :
Immigration Judge, in official capacity., :
:
 **Defendants.** :
:
------------------------------------------------------------x

1

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs R.F.J., A.R.B., J.C., P.L., K.T. and A.Q. (collectively, "Representative Plaintiffs") and Plaintiffs Brooklyn Defenders Services, The Legal Aid Society and The Bronx Defenders (collectively, "Organizational Plaintiffs") filed this lawsuit against Defendants[1] U.S. Immigration and Customs Enforcement ("ICE"), U.S. Department of Homeland Security, U.S. Department of Justice, and the Executive Office for Immigration Review (collectively, "Defendants") alleging violations of the U.S. Constitution's Due Process Clause, the Immigration and Nationality Act, the Administrative Procedure Act, and the Rehabilitation Act. ECF No. 2. Plaintiffs have filed motions for class certification and for a preliminary injunction to enjoin Defendants from refusing to produce detained immigrants in person for removal proceedings. ECF Nos. 17 & 36. For the reasons set forth below, Plaintiffs' motions are **DENIED** and Defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.

## BACKGROUND

Representative Plaintiffs are seven immigrants that were, and in some cases still are, detained in jails outside of New York City and were required to appear for removal proceedings through video teleconferencing ("VTC"). The Organizational Plaintiffs have represented or currently represent the Representative Plaintiffs and other detained immigrants in removal

---

[1] The Complaint also names the following government officials in their official capacity as defendants: Deputy Director and Acting Director of ICE Ronald Vitiello, Secretary of Homeland Security Kirstjen Nielsen, Acting United States Attorney General Matthew G. Whitaker, Executive Associate Director of ICE Enforcement Removal Operations Matthew T. Albene, Director of New York Field Office of ICE Thomas R. Decker, Deputy Director of New York Field Office of ICE William P. Joyce, Director of Executive Office for Immigration Review, James McHenry, and Assistant Chief Immigration Judge Daniel J. Daugherty.

2

proceedings. The Defendant ICE's New York Field Office contracts with jails in the surrounding area to house detained immigrants pending their removal proceedings.

Prior to June 2018, detained immigrants who had removal proceedings at the Varick Street Immigration Court typically appeared for hearings in person. However, on June 27, 2018, the ICE NY Field Office announced it would stop producing detained immigrants in person and instead, detained immigrants would primarily appear for immigration proceedings through VTC ("VTC policy"). Initially, the ICE NY Field Office stated this policy change was in response to safety concerns resulting from a multi-day protest from June 21, 2018 to June 25, 2018 outside the Varick Street Immigration Court. However, the ICE NY Field Office later stated it implemented the policy change due to increases in the number of immigration proceedings occurring at the Varick Street Immigration Court, cost and logistical challenges.

The implementation of the VTC policy has been plagued by numerous technological and scheduling challenges including but not limited to: poor connections, technological failures, over-scheduling, and a limited number VTC lines. Due to these issues, removal proceedings have had to be adjourned or delayed, often prolonging immigrants' time in detention. Although Defendants have acknowledged that there have been technological and scheduling difficulties associated with the adoption of the VTC policy, they maintain that they have taken steps to address these issues. These challenges, however, seem to persist as demonstrated by the fact that the Hudson County Correctional Facility experienced technological failures with its VTC on the day of Oral Argument on the motions before this Court.

In addition to the technological and scheduling difficulties, Representative Plaintiffs and Organizational Plaintiffs allege the VTC policy has affected Representative Plaintiffs', and others' similarly situated, ability to meaningfully participate in their removal proceedings. In

particular, they claim the VTC policy prevents detained immigrants from adequately examining evidence against them, retaining counsel, communicating confidentially with counsel, and effectively utilizing foreign language interpretation services. The Organizational Plaintiffs additionally allege the VTC policy increases the time and cost associated with providing legal services to detained immigrants and their ability to effectively represent their clients.

## LEGAL STANDARD

### I.     Subject Matter Jurisdiction

The Court must examine whether it has subject matter jurisdiction as a threshold inquiry since the existence of subject matter jurisdiction invokes the Court's constitutional or statutory authority to adjudicate the claims before it. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Challenges to subject matter jurisdiction may be raised by the parties or by the Court *sua sponte*. *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991).

"[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Bd. of Educ. of Mt. Sinai Union Free Sch. Dist. v. N.Y. State Teachers Ret. Sys.*, 60 F.3d 106, 109 (2d Cir. 1995) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "[W]e must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs." *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Rather, Plaintiffs must prove subject matter jurisdiction exists by a preponderance of the evidence. *Makarova*, 201 F.3d at 113.

## DISCUSSION

The Real ID Act of 2005 provides:

4

> [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section

8 U.S.C. § 1252(b)(9). The Second Circuit has established a "substance of the relief" test for determining whether district courts have jurisdiction over cases involving removal proceedings. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). Where immigrants in removal proceedings seek to directly or indirectly challenge removal orders or proceedings, the Second Circuit and district courts within the circuit have held district courts do not have jurisdiction. *Id.* *See e.g., Qiao v. Lynch*, 672 F. App'x 134, 135 (2d Cir. 2017) (holding the "IJ's challenged order reopening removal proceedings against Qiao is inextricably linked to the removal proceedings"); *Selvaraja v. U.S. Dept. of Homeland Sec.*, No. 10 civ. 4580, 2010 WL 4861347, *4 (S.D.N.Y. Nov. 30, 2010) (holding the district court lacked jurisdiction over Plaintiff's challenges to the Notice to Appear because it is "the necessary first step for initiating the removal process" and therefore arises from removal proceedings); *Vasquez v. United States*, No. 15 CV. 3946, 2015 WL 4619805, at *4 (S.D.N.Y. Aug. 3, 2015) (holding the district court lacked jurisdiction over a motion seeking to stay removal); *cf. Calderon v. Session*, 330 F.Supp.3d 944, 955 (S.D.N.Y. 2018) (holding the district court had jurisdiction over the Petitioner's "right to seek access to a lawful regulatory process"); *Michalski v. Decker*, 279 F. Supp. 3d 487, 494 (S.D.N.Y. 2018) (holding the Petitioner's "challenge to the constitutionality of his arrest and detention is not barred by § 1252(b)(9)"); *Ruiz v. Mukasey*, 552 F.3d 269, 274 (2d Cir. 2009)(holding § 1252(b)(9) did "not preclude a district court from exercising jurisdiction over an action seeking review of the denial of an I–130 petition because such a denial is unrelated to any removal action or proceeding.").

However, as the Supreme Court's plurality opinion in *Jennings v. Rodriguez* explained, § 1252(b)(9) should not be construed broadly. 138 S. Ct. 830, 840 (2018). *Jennings* involved a habeas petition challenging the government's prolonged detention of an immigrant in removal proceeding without a bond hearing. A plurality of 3 justices concluded that § 1252(b)(9) did not present a jurisdictional bar. In reaching this determination, Justice Alito explained that "the applicability of § 1252(b)(9) turns on whether the legal questions . . . 'aris[e] from' the actions taken to remove aliens." *Id.* Although "arising from" could be construed very broadly, such that it encompasses actions that "would never have occurred if [the immigrant] had not been placed in detention," this "expansive interpretation . . . would lead to staggering results." *Id.* For example, courts would be stripped of judicial review over claims involving inhumane conditions of confinement or state-law assault claims against guards or other detainees, effectively making any claims of prolonged detention unreviewable. *Id.*

Although, in concluding that the Court had jurisdiction, the plurality opinion declined to define the scope of § 1252(b)(9), the fact that it contrasted Petitioner's claim with challenges to "review of an order of removal", "a decision to detain . . . or to seek removal" or "any part of the process by which . . . removability will be determined," is instructive. *Id.* at 841. The contrast suggests that federal courts do not have jurisdiction over a claim challenging part of the process of removal proceedings. Here, Plaintiffs challenge Defendants' VTC policy. How immigrants appear for removal proceedings constitutes part of the process of these proceedings. Therefore, the jurisdictional discussion in *Jennings* contrasting habeas petitions with process challenges is relevant.

The Representative and Organizational Plaintiffs allege that because of Defendants' refusal to produce detained immigrants in person, these immigrants' rights to due process, to

access the courts, to counsel, and to evidentiary and cross-examination privileges are being violated. Furthermore, Plaintiffs allege the Defendants' refusal to produce detained immigrants in the proposed subclass of detained immigrants with disabilities, as defined by the Rehabilitation Act, is discriminatory. Although this Court is very sympathetic to Plaintiffs' claims, it unfortunately lacks jurisdiction over the present case. Plaintiffs' challenge to Defendants' VTC policy arises from "proceeding[s] brought to remove [undocumented immigrants] from the United States." 8 U.S.C. § 1252(b)(9). In other words, because Plaintiffs are challenging, by seeking to enjoin, a "part of the process by which . . . removability will be determined," this court does not have jurisdiction.

In addition, it is worth noting that *Ragbir v. Homan* is not applicable. 923 F.3d 53 (2d Cir. 2019). In *Ragbir*, the Second Circuit addressed whether federal courts have jurisdiction over a claim where the Appellant sought to enjoin the execution of a valid final order of removal on First Amendment grounds. *Id.* at 57. The Appellant was an outspoken immigration activist, who had publicly criticized ICE. *Id.* at 59. He alleged that in enforcing the removal order against him, the Government retaliated against his protected speech and engaged in viewpoint discrimination. *Id.* at 61. The Second Circuit concluded that 8 U.S.C. § 1252(g) stripped federal courts of jurisdiction over the Appellant's claim. *Id.* at 63–66. However, because the Appellant did not have "access to an 'adequate substitute' to the writ (such as a petition for review), or the writ itself" the Suspension Clause entitled the Appellant to "the constitutionally mandated minimum scope of the privilege of habeas corpus." *Id.* at 73 (citation omitted). In this case, Plaintiffs challenge Defendants' VTC policy, not their detention. However, even if Plaintiffs had challenged their detention, *Ragbir* would be inapposite. Unlike the Appellant in *Ragbir*,

Plaintiffs still have the ability to bring their claims in a BIA proceeding or to file a petition for review.

## CONCLUSION

For all of the above-stated reasons, Plaintiffs' motions for a preliminary injunction and class certification are **DENIED** and Defendants' motion to dismiss is **GRANTED**.

**SO ORDERED.**

Dated: June 21, 2019
New York, New York

_____
ANDREW L. CARTER, JR.
**United States District Judge**